IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CANDIDO TORRES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 6258 |
| | ) | |
| v. | ) | Magistrate Judge Cole |
| | ) | |
| THOMAS DART, Sheriff of Cook County, | ) | |
| COOK COUNTY SHERIFF'S OFFICE, | ) | |
| EARL GREER, Superintendent, MARIO | ) | |
| REYES, Assistant Superintendent, and | ) | |
| SALIM DAWALIBI, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff has filed suit under 42 U.S.C. § 1983 against the Sheriff of Cook County, Thomas Dart, the Cook County Sheriff's Office, Sheriff's Office superintendents Earl Greer and Mario Reyes, and Dr. Salim Dawalibi, a physician with Cook County Health and Hospital Systems. He charges them with violating his constitutional rights while he was incarcerated at the Cook County Jail. He alleges that while he was there, a number of medical accommodations he was supposed to have been entitled to were ignored despite his repeated complaints. Sheriff Dart and the Cook County Sheriff's Office have moved to dismiss Count III of plaintiff's complaint, which purports to lodge a *Monell* claim against them in connection with the alleged violations. *See Monell v. Department of Social Services,* 436 U.S. 658 (1978). *Monell* permits suits against municipal entities under § 1983, but only when a governmental policy or custom caused the constitutional deprivation; municipal entities cannot be liable for their employees' actions under a respondeat superior theory. *Id.* at 691.

# I.

## THE PLAINTIFF'S ALLEGATIONS

The plaintiff alleges in his Complaint that, when he arrived at Cook County Jail, he underwent a general intake screening at Cermak Health Services [Dkt. # 38, ¶ 14], which runs the health service for detainees at Cook County Jail. *See Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 298 (7th Cir. 2010). Due to his age and medical conditions, a Cermak nurse recommended he undergo a more extensive examination. [Dkt. # 38, ¶ 14]. As a result, he was diagnosed with hypertension, type II diabetes, asthma, glaucoma, chronic back pain, and chronic knee pain. In order to cope with this constellation of maladies, Cermak issued a number of restrictions. Plaintiff was: (1) to be assigned to a lower bunk; (2) provided the use of a cane; (3) assigned to medical housing; (4) provided medical intermediate care; (5) given a special diet for diabetics; (6) allowed to sit in a regular chair in the day room – plaintiff for some reason applies a shorthand for this, calling it "immobilizer"; and (7) provided the use of a wheelchair for long distances. [Dkt. # 38, ¶ 15].

According to plaintiff, these restrictions were essentially ignored, in violation of his rights as guaranteed by the Eighth and Fourteenth Amendments. He was assigned to a top bunk in regular housing. He was fed the normal diet rather than the one for diabetics. He was not provided the use of a wheelchair for over two months. And while he was initially given an "immobilizer" and allowed to sit in a regular chair and given normal shoes due to the swelling in his feet[1], defendants Greer and Reyes took those away from him after a few weeks. [Dkt. # 38, ¶¶ 16-19].

---

[1] Plaintiff does not list "normal shoes" as one of the medical accommodations he was to be given. [Dkt. # 38, ¶ 15].

Plaintiff repeatedly requested that Greer and Reyes comply with the medical restrictions that Cermak issued, but they refused. They kept him in regular housing, kept him assigned to the top bunk, fed the regular food which is "loaded with grease, salt, and lacked fruit" while other diabetics were given the special diet. Despite repeated requests, he was never provided a cane and had to wait several weeks for the use of a wheelchair for long distances. Despite his repeated complaints, they refused to return his "immobilizer" and normal shoes. His feet became severely swollen as a result, resulting in pain and reducing him to a shuffling walk. [Dkt. # 38, ¶¶ 21-26]. All along, plaintiff filed numerous grievances about these refusals to honor his medical restrictions. [Dkt. # 38, ¶ 27].

Plaintiff alleges that Sheriff Dart was and is, at all relevant times, in complete control of and responsible for the inmates of Cook County Jail. [Dkt. # 38, ¶¶ 9, 38]. He claims that the foregoing acts and omissions violate the Constitution and were the result of the customs, policies, and practices of the Cook County Jail, and fostered by Sheriff Dart. A pattern of deliberate indifference to medical needs was allowed, and employees were not properly trained to respond to these needs or implement necessary medical restrictions. Plaintiff says that the offending customs, policies, and practices include: (1) intentionally fostering an atmosphere at Cook County Department of Corrections in which personnel were encouraged to disregard serious medical needs; (2) failing to ensure personnel adhered to medical restrictions; (3) failing to enforce medical restrictions; (failing to implement an environment in which correction and medical personnel can work with each other to provide basic healthcare and adherence to medical restrictions. [Dkt. # 38, ¶¶ 36-37]. Plaintiff adds that there are several cases pending in the Northern District of Illinois in which inmates allege similar indifference to medical needs. [Dkt. # 38, ¶ 39].

# II.
# ANALYSIS
## A.

To survive a motion to dismiss, a plaintiff's complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint must " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The court must determine if the allegations in the complaint state a plausible claim for relief. *Twombly,* 550 U.S. at 570; *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level...." *Twombly,* 550 U.S. at 555. These factual allegations must be more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555.

The Seventh Circuit has said that this standard is "a fine line, though, and it is appropriate to give plaintiffs a chance to amend a complaint to provide more factual detail, as the district court did here after its first dismissal." *Bausch v. Stryker Corp.,* 630 F.3d 546, 562 (7th Cir.2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success."). A claim should survive a Rule 12(b)(6) motion to dismiss if the complaint contains well-pled facts—that is, not just legal conclusions—that permit the court to infer more than the mere possibility of misconduct. *Iqbal,* 556 U.S. at 679. When resolving a 12(b)(6) motion, the court does not ask did these things happen; but instead, "*could* these things have happened." *Carlson v. CSX*

*Transportation, Inc.,* 758 F.3d 819, 827 (7th Cir.2014).

**B.**

First, a little housekeeping, which is almost always necessary when someone files suit about conditions in the Cook County Jail. Owing somewhat to the inevitable and understandable bureaucracy tangled around the County, the Sheriff, the Jail, and so on, litigants, be they *pro se* or, as here, represented by counsel, often struggle to name the right defendants. Here, the plaintiff named the Cook County Sheriff's Office as a defendant, in addition to the Sheriff of Cook County, Thomas Dart. The defendants argue that Sheriff Dart is the only proper party in Count III, and that the Sheriff's Office is not a suable entity under Illinois law. The Cook County Sheriff is an independently elected official and is the warden of the Cook County Jail. A suit against him in his official capacity, like the instant one, is for all practical purposes, a suit against the "Cook County Sheriff's Office." *See generally Carver v. Sheriff of La Salle County*, 203 Ill.2d 497, 508-16, 787 N.E.2d 127, 134-38 (2003); *Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632, 636 (7th Cir. 2009). As such, the Cook County Sheriff's Office is a redundant party and is dismissed as a defendant.

Plaintiff has no objection to this and makes no argument against it. Instead, plaintiff asks that he be allowed to substitute the County of Cook as a party so the case can continue "without causing unnecessary delays." [Dkt. # 46, at 6]. Yet it has been over a decade since the Seventh Circuit instructed plaintiffs that, in official capacity suits, "counties must be named as parties and are entitled to remain in the suit, so that they may veto improvident settlements proposed (at their expense) by the independently elected officers." *Carver v. Sheriff of La Salle County*, 324 F.3d 947, 948 (7th Cir. 2003). Still, regardless of the reason for the omission of the County of Cook as a

5

defendant, the County must be joined in an amended complaint as the Seventh Circuit has held. *See Askew*, 568 F.3d at 637 ("The district court erred when it dismissed the action; it should instead have ordered that Cook County be made a party."); Fed.R.Civ.P. 19(a)(2).

## C.

Sheriff Dart contends that the plaintiff's complaint must be dismissed because a *Monell* claim must be based on "more than one instance" or a series of random events. [Dkt. # 49, at 5]. The Sheriff also argues that the plaintiff has not stated a viable *Monell* claim because he complains about things that happened only to him. [Dkt. # 49, at 5-6]. And finally, Sheriff Dart also argues that plaintiff cannot target him for the failures outlined in the complaint because Cermak Health Services, which is not under his authority but under the County's authority, provides medical care to Cook County Jail inmates. [Dkt. # 49, at 6].

We'll take this last point first. While it is true that Cermak Health Services is responsible for providing health care, the answer to the question posed by this motion is not to be found in that fact. The Complaint clearly says that it was the Sheriff's personnel who denied the plaintiff access to medical care and failed to follow the restrictions or allow him the accommodations that Cermak Health Services ordered. When the Sheriff's correctional personnel are allegedly ignoring medical restrictions despite repeated complaints, requests, and grievances, fault is not attributable to the Cermak Health Services.

As for evaluating plaintiff's *Monell* allegations, guidance from the Seventh Circuit as to what is needed to survive a 12(b)(6) motion is somewhat uncertain. It is a bit reminiscent of the pleading requirements for setting forth a RICO violation, which were so famously ill-defined that they were

6

compared to Justice Potter Stewart's obscenity test—"I know it when I see it"—set forth in *Jacobellis v. Ohio,* 378 U.S. 184, 197 (1964). *See Morgan v. Bank of Waukegan,* 804 F.2d 970, 977 (7th Cir.1986). The Court of Appeals has refused to adopt any bright-line rules defining a "widespread custom or practice." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). It has allowed that, while there is no clear consensus on how many incidents a plaintiff must plead, it must be more than "one . . . or even three," *Thomas*, 604 F.3d at 303 – in other words, more than three. The plaintiff's claim cannot be based on a random event, but must demonstrate a policy that takes the form of an explicit policy, a gap in expressed policy, or a series of violations to lay the premise of deliberate indifference. *Thomas*, 604 F.3d at 303 (citing *Phelan v. Cook County,* 463 F.3d 773, 790 (7th Cir. 2006) and *Palmer v. Marion County,* 327 F.3d 588, 596 (7th Cir. 2003)).

In this case, we certainly can't agree with the Sheriff that the plaintiff has failed to plead "more than one instance" or "random event." [Dkt. # 49, at 5]. The Complaint could not be clearer that plaintiff had several different medical restrictions, some of which could easily have been accommodated, such as a special tray of food for diabetics – which was, in fact, *de rigeur* in the jail, or at least was supposed to be – or a bunk assignment in a medical wing. Regardless of what they were, the Complaint alleges that all of the restrictions ordered by Cermak were either denied, delayed, or taken away, despite plaintiff's repeated complaints and grievances. Plaintiff has alleged far more than "one or even three" instances. Moreover, they cannot really be described as "random" – they are all instances of the denial of medical restrictions that Cermak found necessary for plaintiff upon his incarceration at the Cook County Jail.[2] Plaintiff has pled a "series of violations" that "lay

---

[2] The Sheriff misreads the Seventh Circuit's opinion in *Thomas* as saying that it is not enough for a plaintiff to plead "a series of random events." [Dkt. # 49, at 5]. The court actually said that the plaintiff
(continued...)

the premise of deliberate indifference." *Thomas*, 606 F.3d at 303.

Finally, the Sheriff contends that the plaintiff cannot merely make allegations about his experiences only. This is an argument with some traction. The allegations plaintiff has made about being denied his medical accommodations may adequately state a pattern for the purposes of demonstrating deliberate indifference, but the claims are limited to Greer and Reyes. Although the plaintiff alleges a series of violations, that series is isolated in the sense that the *dramatis personae* are limited to plaintiff and his two nemeses, Greer and Reyes. Greer and Reyes may well have had some kind of beef with plaintiff, but that does not suggest that the Sheriff had or ought to have had awareness of what was going on such that *Monell* liability might arise. *See, e.g., Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014)("Municipalities may be found directly liable only when their own policy or custom is the 'moving force' behind the deprivation."); *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009)(". . . unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision"); *Lewis v. City of Chicago,* 496 F.3d 645, 656 (7th Cir. 2007) ("If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer there is a policy at work."); *Latuszkin v. City of Chicago,* 250 F.3d 502, 505 (7th Cir.2001)(Complaint must be dismissed where nothing indicates that a few incidents ought to have come to the attention of policymakers).

---

[2](...continued)
cannot rely on "a random event" – singular. *Thomas*, 604 F.3d at 303. Plaintiff has not merely pled a single, random event. But even if a *series* of random *events* were insufficient, that's not really what plaintiff has pled here. He has pled a series of related events, namely denials of the medical restrictions Cermak ordered.

Plaintiff does allege that he has "filed numerous grievances," but without more detail, this bare-bones allegation is inadequate. How many did he file and whom did he file them with? What happened thereafter? If they were simply ignored, that would certainly go a long way to connect what happened to plaintiff to a policy of deliberate indifference to medical needs. But plaintiff's Complaint answers none of these questions.

Plaintiff also alleges that "[s]everal cases are pending in the district court alleging defendants have a practice to provide constitutionally inadequate care to detainees at the Jail." That allegation is even sketchier. What cases and what is alleged? Under Rule 11, an attorney must perform a pre-filing investigation into the facts of their case. *See City of Livonia Employees' Retirement System and Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 762 (7th Cir. 2013). Surely a reasonable inquiry would have uncovered maybe "one or even three" names of the cases the plaintiff's complaint alludes to. But, even so, while we must accept the plaintiff's well-pleaded allegations as true, we are not required to accept the allegations of other plaintiffs as true as well? Because that is all they are, allegations that demonstrate no practice until proven.³ If the rule were otherwise, the

---

³ It should be noted that neither party has much to say on this point in the way of legal analysis. Neither side was able to cite a single case to support their positions [Dkt. # 49, at 5; Dkt. # 52, at 5-6] – that is, until the Sheriff filed his reply brief which, of course, is too little, too late. *Onyango v. Nick & Howard, LLC*, 2015 WL 1569641, 2 (7th Cir. 2015); *Cornucopia Institute v. U.S. Dept. of Agriculture*, 560 F.3d 673, 677-78 (7th Cir. 2009). Even so, the case the Sheriff relies on there, *Sigle v. City of Chicago*, 2013 WL 1787579 (N.D.Ill. 2013) does not necessarily foreclose any *Monell* claim supported by statistical evidence, despite what the Sheriff suggests.

In *Sigle*, the court found that statistics showing a low percentage of complaints against police officers were sustained did not support a *Monell* claim based on widespread deliberate indifference. This was because there was nothing to suggest those complaints were investigated in a negligent manner. The situation would be different here if there were statistical evidence that a high percentage of medical recommendations or orders from Cermak went unheeded or ignored despite repeated complaints by inmates. Unlike a complaint against a police office which would generally be nothing more than one person's word against another, there would be a record of medical orders and a record of complaints about them going
(continued...)

validity of a *Monell* claim would be measured by the number of allegations made by other lawyers in other cases. How many would be enough? Three, ten, twenty? Here, we are told there are "several" pending cases. But several can be as few as three and there are no particulars as to the allegations in those cases. In short, the viability of the *Monell* claim in this case must be determined solely on the strength of Mr. Torres's Complaint.

Plaintiff's allegations of numerous grievances and other pending cases are no more than conclusory allegations. To survive a motion to dismiss, "factual allegations must be more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Olson v. Champaign County, Ill.*, – F.3d –, –, 2015 WL 1934388, *5 (7th Cir. 2015)(quoting *Iqbal,* 556 U.S. at 678); *Doe v. Village of Arlington Heights*, 782 F.3d 911 (7th Cir. 2015). The plaintiff must "'provid[e] some specific facts' to support the legal claims asserted in the complaint." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)(quoting *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009).

So, it must be concluded that the plaintiff has not provided enough detail. Count III of his complaint is dismissed but, as the Seventh Circuit has counseled, the dismissal is without prejudice. *See Bausch,* 630 F.3d at 562. The plaintiff shall have another opportunity to flesh out his *Monell* claims, and in doing so, shall add Cook County as a necessary party.

---

[3](...continued)
unfulfilled. If they go unfulfilled on a widespread basis, that can become a rather relevant statistic at a certain point.

## CONCLUSION

The defendants' partial motion to dismiss Count III of plaintiff's second amended complaint [Dkt. # 49] is GRANTED.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

**DATE:** 7/16/15